FILED
 2011 Dec-06 PM 01:55
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

# EXHIBIT 1



EXHIBIT 1

# EXHIBIT 2



DEFENSE LOGISTICS AGENCY
HEADQUARTERS
8725 JOHN J. KINGMAN ROAD
FORT BELVOIR, VIRGINIA 22060-6221

IN REPLY
REFER TO  DG

DEC 1 0 2009

MEMORANDUM OF DECISION ON THE REQUEST FOR TERMINATION OF THE SUSPENSIONS OF

    AFH FUEL SERVICES, LLC

    AGILITY DEFENSE & GOVERNMENT SERVICES, INC.
        DBA PWC LOGISTICS SERVICES

    AGILITY INTERNATIONAL INC. DBA SEA BRIDGE CONTAINER LINES, INC.

    GLOBAL LOGISTICS FOR GENERAL TRADING AND CONTRACTING WLL

    GULF CATERING COMPANY FOR GENERAL TRADE AND CONTRACTING WLL
        AKA GCC SERVICES

    LA3P LLC

    MATRIX INTERNATIONAL LOGISTICS LLC

    SPAIN AGILITY FIRST SUPPORT LLC AKA SPAIN AFS LLC

    TAOS INDUSTRIES, INC.

    TRISTAR TERMINALS GUAM, INC.

    The suspensions are based on their affiliation to The Public Warehousing Company (PWC), which, on November 9, 2009, was criminally indicted in the United States District Court for the Northern District of Georgia for violations of 18 U.S.C. §§ 371, 1031 and 1343.

    On November 16, 2009, the Defense Logistics Agency (DLA) suspended PWC Logistics Services Co. KSC aka Agility DGS Logistics Services Company KSC(c) (PWC-1), Agility Defense & Government Services, Inc. dba PWC Logistics Services (DGS), and Taos Industries, Inc. (Taos) from Government contracting. Subsequently, on November 19, 2009, DLA suspended Gulf Catering Company for General Trade and Contracting WLL aka GCC Services (GCC) from Government contracting. AFH Fuel Services, LLC and LA3P LLC were suspended on Nov 19, 2009. Agility International Inc. dba Sea Bridge Container Lines, Inc., Tristar Terminals Guam, Inc., and Spain Agility First Support LLC aka Spain AFS LLC were suspended on Nov 23, 2009. Global Logistics for General Trading and Contracting WLL was suspended on Nov 27, 2009. Matrix International Logistics LLC was suspended on Dec 3, 2009. (The aforelisted entities are collectively referred to as the Respondents.)



Federal Recycling Program — Printed on Recycled Paper

**EXHIBIT 2**

HIGHLY CONFIDENTIAL

AGI-00091032

DG   PAGE 2
MEMORANDUM OF DECISION ON THE REQUEST FOR TERMINATION OF THE SUSPENSIONS OF AFH FUEL SERVICES, LLC, AGILITY DEFENSE & GOVERNMENT SERVICES, INC., et al

The Respondents, through legal counsel, submitted written matters in opposition on November 18, 23, 24, 30, and December 7, 2009. The Respondents' written submissions have been incorporated into the administrative record. On December 4, 2009, the Respondents' representatives made an oral presentation to me. Pursuant to the December 7, 2009, written submission, a decision is not sought regarding PWC-1 as additional submissions are planned. Thus, this decision does not apply to PWC-1. After carefully considering the entire administrative record, including the Respondents' written submissions, I have determined that protection of the Government's interests requires the Respondents' continued suspension from Government contracting. Therefore, pursuant to FAR 9.407-1(c), the Respondents will remain suspended until termination of the legal proceedings against PWC.

## INFORMATION IN THE RECORD

The administrative record shows that:

1. PWC (DUNS 64-433-7248)(CAGE SG137), a Kuwaiti shareholding company, is a subsistence prime vendor contracting with the Defense Supply Center Philadelphia (DSCP), a DLA field activity.

2. During all or part of the time of the seriously improper conduct described below, PWC-1 (DUNS 53-471-9070)(CAGE SCD94) was a subsidiary of PWC.

3. During all or part of the time of the seriously improper conduct described below, DGS (DUNS 61-794-9065)(CAGE 4JAQ6) was a PWC business unit.

4. During all or part of the time of the seriously improper conduct described below, Taos (DUNS 78-849-5232)(CAGE 0WGX9) was a PWC subsidiary.

5. During all or part of the time of the seriously improper conduct described below, GCC (DUNS 53-471-6225)(CAGE SBK27) was a PWC subsidiary.

6. During all or part of the time of the seriously improper conduct described below, Agility International Inc. dba Sea Bridge Container Lines (DUNS 155340052)(CAGE 1GHD3) was a PWC subsidiary.

7. During all or part of the time of the seriously improper conduct described below, LA3P LLC (DUNS 829191969)(CAGE 5A5J6) was a PWC subsidiary.

8. During all or part of the time of the seriously improper conduct described below, Matrix International Logistics, Inc was a PWC subsidiary.

DG        PAGE 3
MEMORANDUM OF DECISION ON THE REQUEST FOR TERMINATION OF THE SUSPENSIONS OF AFH
FUEL SERVICES, LLC, AGILITY DEFENSE & GOVERNMENT SERVICES, INC., et al

9. During all or part of the time of the seriously improper conduct described below, Spain Agility First Support LLC aka Spain AFS LLC (DUNS 801454864)(CAGE 4T7M6) was a PWC subsidiary.

10. During all or part of the time of the seriously improper conduct described below, Tristar Terminals Guam Inc. (DUNS 855039244)(CAGE 5HBF3) was a PWC subsidiary.

11. During all or part of the time of the seriously improper conduct described below, AFH Fuel Services, LLC (DUNS 807936666)(CAGE 4WLM6) was a PWC subsidiary.

12. During all or part of the time of the seriously improper conduct described below, Global Logistics for General Trading and Contracting Company W.L.L. (DUNS 557744493) was a PWC subsidiary.

13. On November 9, 2009, a Criminal Indictment was filed in the United States District Court for the Northern District of Georgia against PWC for violations of 18 U.S.C. § 371 (Conspiracy to Commit an Offense), 18 U.S.C. § 1031 (Major Fraud Against the United States) and 18 U.S.C. § 1343 (Fraud by Wire).

## RESPONDENTS' SUBMISSIONS

On November 18, 2009, the Respondents' legal counsel, Rand Allen from the firm of Wiley Rein LLP, met with my legal counsel, at which time the Respondents made oral argument and their first written submission consisting of a copy of a PowerPoint presentation. Thereafter, on November 23, 2009, the Respondents submitted matters in opposition consisting of a 29 page document plus an additional 19 exhibits. At the Respondents' request, on November 24, 2009, Vinson and Elkins, a law firm representing The Public Warehousing Company KSC, submitted additional background information in the form of an eight page letter, dated November 23, 2009. On November 30, 2009, Wiley Rein made an additional submission on Taos' behalf, consisting of a 15 page document plus 9 exhibits.

On December 3, 2009, Mr. Joseph Consumano, President and CEO of Taos Industries, Inc. (Taos), Mr. George Allen, Vice President of Agility Defense & Government Services, Inc. (DGS), and Mr. Rand Allen, legal counsel for the Respondents, made an oral presentation. In summary, they discussed 1) why protection of the U.S. Government does not require the Respondents' suspension, 2) the significant short and long term adverse impacts of the suspensions, and 3) that as a consequence of a special security agreement (SSA) with the Defense Security Service, Taos is not an affiliate of PWC. The Respondents argued that they are presently responsible and that the SSA insulates Taos and its affiliates from influence by PWC. Further, they stated that DGS has been performing the Prime Vendor 2 contract and that PWC has removed itself from administering or overseeing performance of any of its or its affiliates' U.S. Government contracts.

HIGHLY CONFIDENTIAL

AGI-00091034

DG          PAGE 4
MEMORANDUM OF DECISION ON THE REQUEST FOR TERMINATION OF THE SUSPENSIONS OF AFH
FUEL SERVICES, LLC, AGILITY DEFENSE & GOVERNMENT SERVICES, INC., et al

Most recently, on December 7, 2009, the Respondents submitted a five page document with one, one page exhibit. In that submission, they requested a decision on their petition to terminate the suspensions of DGS, GCC and Taos. The December 7th submission also requests, for the first time, the termination of the suspensions of the following additional subsidiaries.* The Respondents requested that no decision be rendered with respect to PWC-1 as they intend to further supplement their submission with respect to that entity.

1. Agility International, Inc.
2. LA3P LLC
3. Matrix International Logistics LLC
4. Sea Bridge Container Lines, Inc.
5. Spain AFS LLC
6. Tristar Terminals Guam, Inc.
7. Spain Agility First Support LLC
8. AFH Fuel Services, LLC
9. Global Logistics for General Trading and Contracting WLL

## DISCUSSION AND ANALYSIS

### Basis for Suspension and Affiliation

The Respondents state that they were *"suspended solely by virtue of the legal technicality of their corporate affiliation with PWC."* (Nov 23, 09 Submission) While there are no allegations that the Respondents engaged in wrongdoing, the FAR recognizes that suspensions may be extended to affiliates regardless of culpability. *See* FAR 9.403 and 9.407-1(c). FAR 9.403 establishes that business entities may be "affiliates of each other if, directly or indirectly, (1) either one controls or has the power to control the other, or (2) a third party controls or has the power to control both." In this instance, the Respondents do not contest that each is controlled, either directly or indirectly, by PWC. It is unrefuted that PWC is the parent of the entire enterprise, as illustrated by the organization charts submitted by the Respondents. After carefully reviewing the entire administrative record, including the Respondents' submissions, I have determined that the Respondents are affiliates of PWC, as defined in FAR 9.403. Consequently, a basis for the suspensions exists pursuant to FAR 9.407.1(c).

---

\* The December 7, 2009 request list also asked that the suspensions of FAS Spain SL and FAS Support Services LLC be terminated. In an email from Wiley Rein, dated December 8, 2009, the Respondents instructed DLA that FAS Spain SL and FAS Support Services LLC *"should be taken off our request list."* Accordingly, FAS Spain SL and FAS Support Services LLC are not included in this decision.

HIGHLY CONFIDENTIAL                                                                               AGI-00091035

DG          PAGE 5
MEMORANDUM OF DECISION ON THE REQUEST FOR TERMINATION OF THE SUSPENSIONS OF AFH FUEL SERVICES, LLC, AGILITY DEFENSE & GOVERNMENT SERVICES, INC., et al

## Present Responsibility

Because the suspensions are based on their affiliation to PWC, the issue is not whether the affiliates' conduct renders them not presently responsible. Rather, the issue is whether PWC has the ability to directly or indirectly control these affiliates. The Respondents have attempted to address this issue by securing a board resolution in which the PWC board adopted a policy to *"refrain from taking any action to administer or oversee any contracts between the U.S. Federal Government and any agencies or instrumentalities thereof and PWC or any direct or indirect subsidiaries of PWC."* (Nov 23, 09 Submission, Exhibit 19) This resolution is consistent with my finding that the Respondents are affiliates of PWC in that they are subsidiaries of PWC. The resolution has been described as a *"'firm commitment' by the Board to the DLA SDO."* (Dec 7, 09 Submission) The indictment indicates that PWC engaged in widespread, deliberate, and carefully orchestrated schemes to defraud the U.S. Government over an extended period of time. I find this board resolution inadequate to address the serious nature and pervasive scope of the criminal conduct alleged in the indictment.

## Remedial Measures

I have carefully reviewed the information provided regarding the Respondents' ethics and compliance programs. The Respondents suggest that because its *"ethics and compliance program requires '[a]ll purchases and sales of goods and services ... to be made on the basis of quality, services, price suitability, and similar relevant and lawful factors ...[and that] [t]he use of false or misleading statements in the conduct of business with third parties is strictly prohibited,'"* that the Respondents are somehow immune from PWC's influence and control. (Nov 23, 09 Submission) The cited language comes from the PWC enterprise-wide ethics and compliance program. These provisions, prohibiting the use of false or misleading information, applied to PWC as well as its affiliates. Yet despite the prohibitions contained in PWC's ethics and compliance program, PWC is alleged to nonetheless have engaged in various criminal schemes to defraud the U.S. Government over an extended period of time. As is apparent from this illustration, the existence of an ethics and compliance program is not a guarantee of ethical or compliant conduct. I find that these remedial measures are inadequate to address the serious nature and pervasive scope of the criminal conduct alleged in the indictment against PWC.

HIGHLY CONFIDENTIAL                                                                                              AGI-00091036

DG   PAGE 6
MEMORANDUM OF DECISION ON THE REQUEST FOR TERMINATION OF THE SUSPENSIONS OF AFH
FUEL SERVICES, LLC, AGILITY DEFENSE & GOVERNMENT SERVICES, INC., et al

## GCC's Present Responsibility

The Respondents suggest that because the Army earlier made a decision not to propose GCC for debarment based on an unrelated incident, that GCC's present responsibility has already been assessed and found to be satisfactory. This reasoning is faulty. The Army's evaluation pertained to the conduct of a minority shareholder who divested his interest in GCC. There is no indication that the Army's suspending and debarring official acted in this matter. Rather, the Respondents' submission indicates that, based on the minority shareholder's divesture, the Army's Chief, Procurement Fraud Branch, elected to close the inquiry into GCC without action by the suspending and debarring official. I find that the Army's prior review of GCC is irrelevant to the matters presently before me. Nor does the Army's prior review bar action by me in this matter. As noted in the Army's letter closing out the GCC case, their decision *"in no way restricts the authority, responsibility, or legal duty of the Army, or any other federal agency, to consider and institute suspension or debarment proceedings based upon information constituting independent cause for suspension or debarment. Such independent cause may include events either related or unrelated, to the subject facts and circumstances."* (Nov 23, 09 Submission, Exhibit 18) (emphasis added)

## Taos Special Security Agreement

Taos alleges that as a result of limitations imposed under a special security agreement (SSA) it has with the Defense Security Service (DSS), PWC is unable to control or otherwise exert influence on Taos. A copy of the SSA and associated procedures, plans, and audits were submitted in support of this position. Contrary to Taos' assertions, I do not find that the SSA or Taos' internal procedures prohibit PWC's involvement in Taos' operations. As described in Taos' submissions, the SSA *"is a standard mitigation measure required by the DSS when it determines that such an agreement is necessary to enable the Federal Government to protect against the unauthorized disclosure of information related to national security."* (Nov 30, 09 Submission) The SSA is designed to limit access to classified and controlled unclassified information. The SSA's measures are designed to protect classified and controlled unclassified information through access controls, training, and audits.

HIGHLY CONFIDENTIAL   AGI-00091037

DG          PAGE 7
MEMORANDUM OF DECISION ON THE REQUEST FOR TERMINATION OF THE SUSPENSIONS OF AFH FUEL SERVICES, LLC, AGILITY DEFENSE & GOVERNMENT SERVICES, INC., et al

Conversely, the SSA is not designed to limit PWC's control over Taos. This fact is evident from the submissions. For example, although the SSA requires preapproval of visits by PWC and other related entities to Taos, the bulk of these visits are categorized as *"routine business visits."* Routine business visits *"are in general those that are made in connection with the regular day-to-day business operations ... [and] do not involve the transfer or receipt of classified or controlled unclassified information"* and only require coordination with the facility security officer. (Nov 30, 09 Submission) The indictment raises concerns regarding PWC's control over Taos *vis-à-vis* the alleged fraudulent schemes (not access to classified or controlled unclassified information). The SSA does not prohibit visits by PWC to Taos, and because the fraud does not pertain to the transfer of classified or controlled information, the visits would be characterized as routine business visits requiring minimal scrutiny.

With respect to telephonic and electronic communications, the submissions indicate that there were thousands of communications between Taos and its parent organizations in 2009. Taos monitored electronic communications using software designed to identify access to classified and controlled information (not the commission of fraud). Additionally, the submissions note that Taos is not in compliance with SSA requirements to maintain required communication logs.

As noted in the submissions, the SSA *"ensure[s] that PWC's involvement in Taos' business affairs remains as circumscribed in the SSA."* (Nov 30, 09 Submission) The SSA does not prohibit interaction between PWC and Taos or its affiliates. The SSA is not designed to restrain the content of interactions between PWC and TAOS or its affiliates, other than to identify situations in which classified or controlled unclassified information could be compromised. Consequently, after careful evaluation of the submitted materials, I conclude that the SSA is an ineffective means of insulating Taos from PWC's control.

Impact

I note the significant and adverse impact of these suspensions on the Respondents. Prior to deciding to suspend the Respondents based on their affiliation to PWC, I carefully weighed the Government's need to take immediate action to protect its business interests against likely harm to PWC and its affiliates. While recognizing that suspension is a discretionary measure, based on the seriousness and prevalence of the alleged criminal conduct, I found that protection of the U.S. Government's business interests demanded the immediate suspension of PWC and its affiliates. Upon the Respondents' request for termination of the suspensions, I again considered the severity of the consequences of the suspensions. Recognizing the considerable impact to the Respondents, I nonetheless find the risk of harm to the Government's business interests far outweigh the Respondents' interests. I find that protection of the Government's interests requires the Respondents' continued suspension notwithstanding the significant adverse impacts to them.

HIGHLY CONFIDENTIAL

AGI-00091038

DG        PAGE 8
MEMORANDUM OF DECISION ON THE REQUEST FOR TERMINATION OF THE SUSPENSIONS OF AFH FUEL SERVICES, LLC, AGILITY DEFENSE & GOVERNMENT SERVICES, INC., et al

## FINDINGS

Based on the information in the record, I find that there is adequate evidence that:

1. On November 9, 2009, a Criminal Indictment was filed in the United States District Court for the Northern District of Georgia against PWC for violations of 18 U.S.C. § 371 (Conspiracy to Commit an Offense), 18 U.S.C. § 1031 (Major Fraud Against the United States), and 18 U.S.C. § 1343 (Fraud by Wire). The alleged criminal conduct provides a cause for suspension pursuant to FAR 9.407-2(a)(1), (3), (8) and (c).

2. Pursuant to FAR 9.407-1(c), suspension may be extended to affiliates of a contractor. FAR 9.403 ("Affiliates.") states that, "Business concerns, organizations, or individuals are affiliates of each other if, directly or indirectly, (a) either one controls or has the power to control the other or, (b) a third party controls or has the power to control both. Indicia of control include, but are not limited to, interlocking management or ownership, identity of interests among family members, shared facilities and equipment, common use of employees, or a business entity organized following the debarment, suspension, or proposed debarment of a contractor which has the same or similar management, ownership or principal employees as the contractor that was debarred, suspended, or proposed for debarment."

    a. PWC and DGS are affiliates, as defined in FAR 9.403 ("affiliates"). The affiliation of PWC with DGS provides a basis for DGS's suspension, pursuant to FAR 9.407-1(c).

    b. PWC and Taos are affiliates, as defined in FAR 9.403 ("affiliates"). The affiliation of PWC with Taos provides a basis for Taos's suspension, pursuant to FAR 9.407-1(c).

    c. PWC and GCC are affiliates, as defined in FAR 9.403 ("affiliates"). The affiliation of PWC with GCC provides a basis for GCC's suspension, pursuant to FAR 9.407-1(c).

    d. PWC and Agility International Inc. dba Sea Bridge Container Lines, Inc. are affiliates, as defined in FAR 9.403 ("affiliates"). The affiliation of PWC with Agility International Inc. dba Sea Bridge Container Lines, Inc. provides a basis for Agility International Inc. dba Sea Bridge Container Lines, Inc.'s suspension, pursuant to FAR 9.407-1(c).

    e. PWC and LA3P LLC are affiliates, as defined in FAR 9.403 ("affiliates"). The affiliation of PWC with LA3P LLC provides a basis for LA3P LLC's suspension, pursuant to FAR 9.407-1(c).

    f. PWC and Matrix International Logistics, Inc. are affiliates, as defined in FAR 9.403 ("affiliates"). The affiliation of PWC with Matrix International Logistics, Inc. provides a basis for Matrix International Logistics, Inc.'s suspension, pursuant to FAR 9.407-1(c).

HIGHLY CONFIDENTIAL
AGI-00091039

Case 5:11-cv-04111-CLS   Document 1-1   Filed 12/06/11   Page 12 of 15

DG        PAGE 9
MEMORANDUM OF DECISION ON THE REQUEST FOR TERMINATION OF THE SUSPENSIONS OF AFH FUEL SERVICES, LLC, AGILITY DEFENSE & GOVERNMENT SERVICES, INC., et al

g. PWC and Spain Agility First Support LLC aka Spain AFS LLC are affiliates, as defined in FAR 9.403 ("affiliates"). The affiliation of PWC with Spain Agility First Support LLC aka Spain AFS LLC provides a basis for Spain Agility First Support LLC aka Spain AFS LLC's suspension, pursuant to FAR 9.407-1(c).

h. PWC and Tristar Terminals Guam Inc. are affiliates, as defined in FAR 9.403 ("affiliates"). The affiliation of PWC with Tristar Terminals Guam Inc. provides a basis for Tristar Terminals Guam Inc.'s suspension, pursuant to FAR 9.407-1(c).

i. PWC and FAS Spain SL are affiliates, as defined in FAR 9.403 ("affiliates"). The affiliation of PWC with FAS Spain SL provides a basis for FAS Spain SL's suspension, pursuant to FAR 9.407-1(c).

j. PWC and FAS Support Services, LLC are affiliates, as defined in FAR 9.403 ("affiliates"). The affiliation of PWC with FAS Support Services, LLC provides a basis for FAS Support Services, LLC's suspension, pursuant to FAR 9.407-1(c).

k. PWC and AFH Fuel Services, LLC are affiliates, as defined in FAR 9.403 ("affiliates"). The affiliation of PWC with AFH Fuel Services, LLC provides a basis for AFH Fuel Services, LLC's suspension, pursuant to FAR 9.407-1(c).

l. PWC and Global Logistics for General Trading and Contracting Company W.L.L. are affiliates, as defined in FAR 9.403 ("affiliates"). The affiliation of PWC with Global Logistics for General Trading and Contracting Company W.L.L. provides a basis for Global Logistics for General Trading and Contracting Company W.L.L.'s suspension, pursuant to FAR 9.407-1(c).

3. The causes specified above directly affect the present responsibility of Agility Defense & Government Services, Inc. dba PWC Logistics Services, Taos Industries, Inc., Gulf Catering Company for General Trade and Contracting WLL aka GCC Services, Agility International Inc. dba Sea Bridge Container Lines, Inc., LA3P LLC, Matrix International Logistics LLC, Tristar Terminals Guam, Inc., FAS Spain SL, FAS Support Services LLC, Spain Agility First Support LLC aka Spain AFS LLC, AFH Fuel Services, LLC, and Global Logistics for General Trading and Contracting WLL to be Government contractors and reflect negatively on the propriety of further Government business dealings with them. On the basis of the administrative record before me, I have determined that protection of the Government's business interests requires their continued suspension pending completion of criminal proceedings.

HIGHLY CONFIDENTIAL                                                                                           AGI-00091040

DG         PAGE 10
MEMORANDUM OF DECISION ON THE REQUEST FOR TERMINATION OF THE SUSPENSIONS OF AFH FUEL SERVICES, LLC, AGILITY DEFENSE & GOVERNMENT SERVICES, INC., et al

### DECISION

I have carefully considered the entire administrative record, including the Respondents' request to terminate their suspensions and the accompanying submissions. Pursuant to the authority granted by Federal Acquisition Regulation (FAR) Subpart 9.4, the Defense FAR Supplement (DFARS) Subpart 209.4, and DoD 4160.21-M, Chapter VII, and based upon the findings herein and the evidence contained in the administrative record, I find that protection of the Government's interests requires the continued exclusion from contracting with the U.S. Government of the following entities: Agility Defense & Government Services, Inc. dba PWC Logistics Services, Taos Industries, Inc., Gulf Catering Company for General Trade and Contracting WLL aka GCC Services, Agility International Inc. dba Sea Bridge Container Lines, Inc., LA3P LLC, Matrix International Logistics LLC, Tristar Terminals Guam, Inc., Spain Agility First Support LLC aka Spain AFS LLC, AFH Fuel Services, LLC, and Global Logistics for General Trading and Contracting WLL. Thus, I deny the Respondents' request for early termination. The suspensions are temporary pending the completion of criminal proceedings against PWC.

*[signature]*

M. SUSAN CHADICK
Special Assistant for
Contracting Integrity

HIGHLY CONFIDENTIAL                                                      AGI-00091041

# EXHIBIT 3



**DEFENSE LOGISTICS AGENCY**
**HEADQUARTERS**
**8725 JOHN J. KINGMAN ROAD**
**FORT BELVOIR, VIRGINIA  22060-6221**

IN REPLY
REFER TO

Lieutenant General Joseph M. Cosumano, Jr.
US Army, Retired
President & Chief Executive Officer
Agility Defense & Government Services, Inc.
480 Production Avenue
Madison, AL  35758

FEB - 4 2011

Re:  Request for Reconsideration

Dear General Cosumano:

    The following is in response to your letter dated November 24, 2010, and the oral presentation you and your counsel, Mr. Rand Allen, made to me on behalf of Agility Defense & Government Services, Inc., f/k/a Taos Industries, Inc. (DGS, Inc.) on January 18, 2011, requesting that Defense Logistics Agency (DLA) reconsider its November 16, 2009, decision to suspend DGS, Inc., from government contracting.

    The Public Warehousing Company (PWC) is the parent company of and controls DGS, Inc., either directly or indirectly.  Accordingly, DGS, Inc.'s suspension pursuant to FAR 9.407-1(c) is based upon its affiliation, as defined by FAR 9.403, to PWC, which on November 9, 2009 was criminally indicted in the United States District Court for the Northern District of Georgia for violations of 18 U.S.C. §§ 371, 1031 and 1343.

    I find that you have not presented material information about a change in the relationship between DGS, Inc., and PWC that is not already reflected in the administrative record or that was not considered by the United States District Court for the District of Columbia when it heard and ruled against your Motion for a Temporary Restraining Order against DLA, et al., on December 11, 2009.  I have therefore determined that protection of the Government's interests requires the continued suspension of DGS, Inc., from Government contracting pursuant to FAR 9.407-1(c) until termination of the legal proceedings against PWC.

    If you have any further questions, you may contact my counsel, Noël Woodward, at (703) 767-6068.

Sincerely,

*Susan Chadick*

M. SUSAN CHADICK
Special Assistant for
Contracting Integrity

Cc:  Mr. Rand Allen, Wiley Rein LLP



**EXHIBIT 3**